UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEANNINE ANN COLEMAN,

                      Plaintiff,

v.

                                                        18-CV-6894

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 21. Jeannine Ann Coleman ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") partially denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 11, 19. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and the Commissioner's motion (Dkt. No. 19) is granted.

## BACKGROUND

On August 5, 2013, Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she became disabled on December

31, 2008.  Tr. at 299-302.[1]  After a hearing held by video conference, Administrative Law Judge Roxanne Fuller issued an unfavorable decision.  Tr. at 97-120.  The Appeals Council thereafter found that Plaintiff was deprived of an in person hearing despite timely objecting to the notice of video telephone conference.  Tr. at 123.  Administrative Law Judge John P. Costello ("the ALJ") conducted an in-person hearing on October 3, 2017.  Tr. at 49-83.  Plaintiff, who was represented by counsel, testified as did an impartial vocational expert.  Tr. at 49-83.  On November 21, 2017, the ALJ issued a decision in which he found that Plaintiff was disabled as of March 22, 2016, but not prior thereto.  Tr. at 12-29.  The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-6.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R.

---

[1] Citations to "Tr. at __" refer to the pages of the administrative transcript, which appears at Docket No. 8.

§ 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listing").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the Listing criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position.  *See  Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational

4

interpretation, the Commissioner's conclusion must be upheld. *See, e.g., Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date, May 19, 2009. Tr. at 18. At step two, he found that Plaintiff had the following severe impairments: carpal tunnel syndrome, anxiety disorder, and PTSD. Tr. at 18.[2]

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listing criterion, giving special consideration to Listing 12.04 (Depressive, Bipolar and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders). Tr. at 18. Regarding the "paragraph B" criteria, the ALJ found that Plaintiff had no limitation in two broad areas of functioning (interacting with others, and adapting or managing oneself), a mild limitation in the area of understanding, remembering, or applying information, and a moderate limitation in the area of concentrating, persisting, or maintaining pace. Tr. at 19.

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at length in the papers.

The ALJ found, based on the entire record and the vocational expert's testimony, that Plaintiff retained the RFC for a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 404.967(a), in that she is able to perform simple and routine tasks and low stress work defined as work with only occasional decision making, as well as work involving only frequent reaching, occasional fingering and handling, with no heavy machinery or sharp objects, and only occasional exposure to respiratory irritants.  Tr. at 19.  Continuing to the fourth step, the ALJ found that prior to March 22, 2016, the date when her age category changed from a "younger individual" (age 45-49), to an "individual closely approaching advanced age" (age 50-54), Plaintiff was able to perform jobs that exist in significant numbers in the national economy, including the sedentary jobs of call out operator (DOT 237.367-014), and election clerk (DOT 349.367-010).  Tr. at 22-23.  Beginning on March 22, 2016, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Tr. at 24.  Accordingly, concluded the ALJ, Plaintiff was not disabled prior to March 22, 2016, but became disabled on that date and continued to be disabled through the date of his decision.  Tr. at 24.[3]

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 11, 19.  Plaintiff argues that the ALJ failed to cite any evidence when making certain findings, and that he did not develop the record as required.  Dkt. No. 11-1, pp. 17-30.  The Commissioner contends that Plaintiff failed to meet her burden of proving

---

[3] For purposes of DIB, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Act at any time through her date last insured, December 31, 2013.  Tr. at 24.

that her impairments were of Listing-level severity, and that the ALJ's finding that Plaintiff was disabled as of March 22, 2016, but not prior thereto, was based on a fully developed record and is supported by substantial evidence. Dkt. No. 19-1, pp. 7-18. Having reviewed the record in its entirety, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**The ALJ's "Special Technique" Analysis**

Under the step three regulations, Plaintiff has the burden to show that her impairment or combination of impairments meet or medically equal a listed impairment. *Petrie v.* Astrue, 412 F. App'x 401, 404 (2d Cir. 2011) (stating that "[t]he claimant bears the burden of proof as to the first four steps"). "For a claimant to qualify for benefits by showing that [her] . . impairment . . . is "equivalent" to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). With most mental impairments, this requires a claimant to show that in addition to certain medical symptoms ("paragraph A"), she has an extreme limitation in one or a marked limitation in two of the following areas of mental functioning set forth in "paragraph B": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).[4]

---

[4] The degrees of limitation for the "paragraph B" criteria are "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 416.920a(c)(4).

"The ALJ's written decision must include a specific finding as to the degree of limitation in each of the [four] functional areas," an analysis referred to as the "special technique." *Kennerson v. Astrue,* No. 10-CV-6591 (MAT), 2012 WL 3204055, at *14 (W.D.N.Y. Aug. 3, 2012) (citing *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008)); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295-97 (W.D.N.Y. 2016). In Plaintiff's case, the ALJ found that she has, at most, a moderate limitation in one of the paragraph B areas of mental functioning for Listing sections 12.04 and 12.06.[5] Tr. at 19. As such, her impairments did not meet or medically equal the Listing criterion. Tr. at 19.

Plaintiff argues that "the ALJ's special technique finding is unsupported by substantial evidence, and the ALJ erred by failing to cite to any evidence." Dkt. No. 11-1, pp. 17-20. This Court does not agree. As the Second Circuit Court of Appeals stated in *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010), "[a]lthough we have cautioned "that an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent [a reviewing court] from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" *Salmini*, 371 F. App'x at 112 (quoting *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir. 1982)).

---

[5] Plaintiff argues that this case should be remanded because the ALJ did not analyze her impairments under Listing 12.15 (Trauma- and Stressor-Related Disorders). This argument is unavailing. To be entitled to benefits under Listing 12.15, Plaintiff would still have to meet the paragraph B criteria for mental impairments. *See* Listing 12.15. For the reasons stated herein, this Court affirms the ALJ's conclusion that Plaintiff had, at most, a moderate limitation in one area of functioning. Accordingly, any error on the ALJ's part in failing to explicitly analyze Plaintiff's impairments under this particular Listing is harmless and does not compel remand. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (stating that "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

Having reviewed the ALJ's decision in its entirety, this Court finds that his rationale for finding that Plaintiff had a moderate or less than moderate limitation in each of the functional areas is clear and that his conclusions are supported by substantial evidence. In his step three analysis, the ALJ explicitly assigns a degree of limitation to each of the four areas, stating, "[a]s discussed in greater detail below, [Plaintiff's] psychiatric impairments do not indicate any more than moderate limitations in functioning." Tr. at 19. Later in his decision, the ALJ affords "great weight" to the opinion of consulting examiner Dr. Christine Ransom (Tr. at 21), who opined on October 7, 2013, that: "[Claimant] will show no evidence of difficulty following and understanding simple directions and instruction, perform[ing] simple tasks independently, maintain[ing] attention and concentration for simple tasks, maintain[ing] a simple and regular schedule, [or] learn[ing] simple new tasks. She will have moderate difficulty performing complex tasks and appropriately deal[ing] with stress. She can relate adequately with others. . . ." Tr. at 478. Dr. Ransom noted that Plaintiff, while moderately tense: was neat, casual, and appropriate in her hygiene and grooming; appeared to be of average intelligence with intact immediate and remote memory and attention and concentration; had coherent and goal directed thought processes and good insight and judgment; was able to dress, bathe, and groom herself, cook and prepare food, clean laundry, go shopping, and manage money; socialized with family and friends; and was "able to take care of necessary daily business." Tr. at 477-78.

Dr. Ransom's opinion is entirely consistent with the finding that Plaintiff had a mild limitation in understanding, remembering, and applying information, and a moderate limitation in concentration, persistence, and pace, but was otherwise unrestricted. Tr. at

9

19. Accordingly, this Court finds that the ALJ's "special technique" analysis was legally sufficient and declines to remand the case on this basis. *Salmini*, 371 F. App'x at 112-13 (holding that "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination").

**The Duty to Develop the Record**

Given "the essentially non-adversarial nature of a benefits proceeding," an ALJ "must . . . affirmatively develop the record." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty applies even when the claimant is represented by counsel. *Moran*, 569 F.3d at 112. That is, when a claimant's counsel fails to provide records, the ALJ is not necessarily excused from making his own good faith effort to obtain the missing records. *See Cadet v. Colvin*, 121 F. Supp. 3d 317, 321 (W.D.N.Y. 2015). "On the other hand, where there are no 'obvious gaps' in the record and a 'complete medical history' exists, the ALJ is not obligated to seek additional evidence." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Rosa*, 168 F.3d at 79 n.5).

Plaintiff argues that the ALJ failed to request function-by-function assessments from Plaintiff's treatment providers and that without these statements, the record was not fully developed. Dkt. No. 11-1, pp. 20-25. Specifically, Plaintiff contends that the ALJ should have asked Plaintiff's treating physician, Dr. Ruth Kouides, for the

"disability forms" that she filled out on Plaintiff's behalf and referred to in her treatment notes. Dkt. No. 11-1, p. 22. Relatedly, plaintiff argues that Dr. Nikita Dave, the consultative examiner to whose opinion the ALJ assigned "great weight" (Tr. at 21), did not opine as to her ability to sit, stand, or walk, and did not quantify her ability to use her hands, lift, carry, push, pull, or reach; therefore, his opinion, standing alone, could not provide substantial evidence for the physical RFC. Dkt. No. 11-1, pp. 25-26. These arguments are unavailing for several reasons.

The record shows that Dr. Kouides filled out disability paperwork on September 2, 2011, August 30, 2012, February 20, 2013, and October 28, 2014, which do not appear in the record. Tr. at 431, 437, 456, 536. Contrary to Plaintiff's argument, this does not create a gap in the record, because Dr. Kouides explicitly stated in her treatment notes that Plaintiff had restrictions only in her upper extremities related to repetitive motion and vibratory tools. For example, Dr. Kouides stated on September 4, 2013:

> She has forms for public assistance. Her prior disability limits her upper arm work, but does not preclude her from other work. **We have completed her forms continuing her restriction against repetitive motion and vibratory tools**.

Tr. at 425 (emphasis added). On February 13, 2014, Dr. Kouides noted:

> Jeannine has lost her GM benefits and is applying for SSI disability. She is quite distraught as she does not know how her hearing will go. I discussed that SSI is only if you cannot do any job. **Her disability is limited to her upper extremities.**

Tr. at 520 (emphasis added); see also Tr. at 439 (noting on September 5, 2012, that Plaintiff had a "limitation of the use of her hands due to bilateral carpal tunnel"); Tr. at 453 (stating on December 16, 2011, that Plaintiff "continues to have symptoms of carpal tunnel," and that "[s]he is able to work but her employer has been unable to find her

11

employment without repetitive motion, vibratory tools and within the weight restriction"); Tr. at 456 (noting on September 7, 2011, that Plaintiff "cannot use vibratory tools or lif[t] heavy items according to her prior evaluation"); Tr. at 459 (stating on August 16, 2011, "[i]t has been recommended that she avoid repetitive motions which could lead to vibratory injury"); and Tr. at 536 (opining on October 28, 2014, that Plaintiff has "no limitations other than her upper extremities").

      Given Dr. Kouides' treatment notes, it cannot be said that the "missing" disability paperwork would establish that Plaintiff had physical limitations other than those caused by her carpal tunnel syndrome, which was accommodated by the RFC limiting Plaintiff to sedentary work with only frequent reaching, occasional fingering and handling, and no work with heavy machinery. Tr. at 19. Moreover, the administrative record contains not only the opinions of Drs. Dave and Ransom, and the treatment notes of Dr. Kouides, but also notes from numerous other treatment providers including Alicia Wilkerson, D.O., Abby Millner, RPA-C, Dr. Mark A. Brown, Dr. William H. Bayer, Randy Smart, LMFT, John Rushforth, NP. Dkt. No. 11-1, p. 24. The Second Circuit Court of Appeals has made clear that on a complete record such as this, the ALJ does not need to affirmatively obtain the opinion of a treating physician. *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (citing *Tankisi v. Comm'r of Soc. Sec.,* 521 F. App'x. 29, 33-34 (2d Cir. 2013) (holding that the absence of a medical source statement from a claimant's treating physician is not fatal to the ALJ's determination)). Accordingly, the ALJ was not under any obligation to obtain additional medical opinions.

This Court also finds that the fact that Dr. Dave did not opine on Plaintiff's ability to sit, stand, or walk does not undermine the validity of his opinion nor the soundness of the physical RFC. Plaintiff never claimed that she was unable to sit, stand, or walk, only that she had carpal tunnel syndrome, intermittent finger numbness, and anxiety attacks. Tr. at 481. Moreover, Dr. Dave's musculoskeletal examination of Plaintiff was totally unremarkable, with the exception of distal wrist crease tenderness.[6] Tr. at 482-83. Under the circumstances, Dr. Dave would have no reason to opine on these functional abilities. The record is devoid of any evidence that Plaintiff had any difficulties sitting, standing, and/or walking, and reflected generally normal/unremarkable physical examination results. Tr. at 518, 594, 598, 601-02, 608-09, 612-13, 628, 631, 640, 644, 655, 685. The ALJ is entitled to rely not only on what the record says, but also on what it does not say. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *Diaz v. Shalala,* 59 F.3d 307, 315 (2d Cir. 1995) (holding that the ALJ properly relied on the absence of findings in the record regarding claimant's alleged inability to sit). Finally, as previously noted, Dr. Kouides' treatment notes confirm that Plaintiff's limitations were restricted to her upper extremities. In the view of this Court, these medical findings constitute substantial evidence for the RFC.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that there could be "two contrary rulings on the same record" and both "may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).

---

[6] With respect to Plaintiff's wrists, Dr. Dave found that "[h]er pain response appeared to be exaggerated at times so this may be in relation to hypersensitivity." Tr. at 483.

That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder **would have to conclude otherwise**." *Brault*, 683 F.3d at 448 (emphasis added).  This case does not present such a situation.  For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby DENIED, and the Commissioner's motion for Judgment on the pleadings (Dkt. No. 19) is GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         September 29, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**